Good morning, your honors. May it please the court. Jamie Kilberg on behalf of the defendant, Jose Helguera-Del Rio. Your honor, we're asking this court today to reaffirm what it has repeatedly held, which is that when the government engages in misconduct in closing arguments that goes to core, critical issues in the case, that reversal is required, even on plain error review. In this instance, there were three different acts of misconduct in the closing arguments made by the prosecutor. The most serious of which, which the government has conceded was erroneous, was vouching for the government's primary witness that provided any direct evidence against Mr. Helguera. This court routinely reverses on plain error when the government vouches for a witness, that witness's credibility is paramount to the case, and the vouching itself is aimed at bolstering the credibility of that witness. And that is precisely what happened here when the prosecutor stood up in closing arguments referring to the co-defendant, Alberto Martinez, who testified against Mr. Helguera and stated that the jury should believe Mr. Martinez's version of events and the reason for him changing his story because the prosecutor himself found it to be a believable story or a believable reason for changing his. Okay, I understand what you're saying, and I guess what's my standard of review on this? This is subject to plain error review. So we're really talking about plain error review, and the government's argument is that any prejudice resulting from this was minimal. Isn't that what the government argues? That is what the government argues. All right, so one thing, the court instructed the jury that it should view Martinez's testimony with caution because he agreed to plead guilty in exchange for his cooperation and testimony. There was an instruction dead on about Martinez and about whether we should view that as good or bad. The prosecutor makes a big problem if he tries to march in on that kind of stuff. That's correct, Your Honor. And that's exactly what happened here. That's correct. And as I understand it, the jury is supposed to follow the instructions of the court, not some stray remark made by the attorney in closing argument. Isn't that also true? That is certainly the case. That's Fields. Correct. So then we've got that. The next argument by the government is that Martinez's credibility was attacked during the trial on the basis of a shifting of a version of events. So, again, the government says it's doubtful that this remark was more impactful than the testimony Martinez himself gave. So I guess I'm trying to understand why this is more than what you want to make it, which I have a plain error of view. I understand, Your Honor, and I guess I would disagree, of course, with the government that this was a stray comment or a minor comment. This, again, the prosecutor vouched for the reason that Martinez changed his story. But just a minute. You're talking about what the prosecutor vouched, but thereafter, and we didn't even get to this, he came back and said, well, what I said might have gone over the line. So he went so far as to say, what I believe doesn't matter a hoot. The only thing that matters was what you think about the evidence presented. So adding all of that up, what he said he himself undid, and then we put these other things the government's argued. So why does that make it plain error? Well, I don't believe that what the prosecutor did was sufficient to undo his own error in context. Well, I understand that might be your argument. I'm just trying to put you on the spot. This is plain error of you. I understand. And what the prosecutor, even in saying what matters is what you think, he doubled down on his own error and repeated to the jury that he believes Martinez. And, you know, again, it's a – I didn't – double down seems a little difficult for me to believe when he says, you don't believe what I say. It doesn't matter a hoot what I say. Well, I think what he said was it doesn't matter what I – it doesn't matter that I believe Martinez. I don't have the exact quote in front of me. Well, I have doesn't matter a hoot what I believe. Okay. So he was, again, reiterating his own personal belief that Martinez's change in story, which was a critical turning point in the trial because it was only at that point that the government was able to offer any direct evidence. Well, but we're now long past that. We're at the point of closing argument. Well, I guess what I meant by that was Martinez's – the fact that he changed the story and got up on the witness stand and testified at trial was the turning point in the trial. It was the only time the government had direct evidence linking Mr. Helguera's knowledge, if any, to the drugs that were hidden in the vehicle that Mr. Martinez was driving. The court's instruction – I agree with the court that the trial court properly instructed the jury that it should treat Mr. Martinez's testimony with the appropriate amount of caution. But I think those instructions come prior to the closing argument, and then in closing argument the prosecutor gets up and says, I believe this guy and you should too. I don't have any more questions about that part. You want to go to another part of your argument? I mean, others may. All I'm trying to do – it may seem like I'm against you, but I'm just trying to ferret this out. I've got a plain error review. For an appellate court, having been in the district court once or twice, I don't like the appellate court getting in my business, especially if the general counsel doesn't even object. And now it's plain error review. So come on, tell me why it's plain error. Well, I understand, Your Honor. That's all I'm trying to do. That's all I'm trying to say to you. I understand. The Ninth Circuit has been pretty clear that even on plain error review, when the government engages in vouching of a witness and vouching for that witness's credibility, and that witness is a critical witness in the case. What's the best case for that, even on plain error? Well, the best case for that, I think, is the – Even on plain error? The Weatherspoon case from 2005, which is cited in the Alcantara-Castillo case that we cited in our briefs. That case was a plain error review, and it held exactly that. And that's what happened here in this case. You know, that's not the only misconduct issue. Well, that's why I was trying to move you to the next argument. I think you've said what you have to say about that. Sure. The prosecutor also, in this case, in closing arguments, which I think the government has admitted improperly engaged in a propensity argument in violation of the trial court's 404B ruling regarding a prior trip to California that these two individuals supposedly went on. And again, Mr. Martinez was the only witness who offered any evidence regarding that that trip even existed. And in closing argument, the prosecutor stood up and said that this is a defendant who is a drug trafficker who engages in trips to California, at least two in this case that we know of. And the government, again, argues this was an isolated argument, that otherwise the evidence was strong against the defendant, which I think goes to a point you were making earlier, Judge Smith. But I think when you break apart the evidence that was admitted at trial against Mr. Helguera, the evidence was not strong until Mr. Martinez took the stand. The evidence against Mr. Helguera was that he was a passenger in a vehicle where drugs were found hidden in the floor, and there were other aspects of circumstantial evidence regarding his knowledge. But until Mr. Martinez stood up and said, Mr. Helguera planned all this, he knew about it, he left me at a hotel when he went to go pick up drugs, and by the way, we did this the week before, it was only at that point that the evidence became strong, I guess, against Mr. Helguera. That's why it was admitted. It was admitted because one was saying I didn't do it, didn't have any part of it, never had anything to do with it, so it admitted for that reason. Correct. And not only admitted for that reason, but admitted with a cautionary instruction as to how you could look at that evidence, and now I'm supposed to find plain error? Well, that's correct, Your Honor. It was admitted for the limited purposes of knowledge, lack of accident, and intent. But when the government stood up in the closing arguments, pushed aside those three permitted bases and argued to the jury that this prior trip, the jury should consider that because this guy engages in trips to California to deal drugs. And the court was very clear, the district court was very clear, that the prosecutor was not permitted to offer evidence or make suggestions of other trips to California precisely because of the prejudicial effect that it would have. And finally, with respect to the misconduct in this case, there was a pretrial stipulation. And the evidence was that Mr. Helguera had a user amount of methamphetamine next to him in the door handle pocket, and that there was a very large amount of methamphetamine hidden under the floor in the seat storage compartments in the vehicle. Prior to trial, the government and the defense stipulated that no link was established between those two sets of methamphetamine. And importantly, and this is the critical part of the stipulation, is that the government conceded it would not argue to the jury that any such link existed. Did they ever argue? Yes. Well, they asked a question, but they didn't argue. The prosecutor was very clever about it and talked about Mr. Helguera having this user amount of methamphetamine and this other larger quantity being behind him in the floor. And what he said to the jury was, I believe he said, I'm just going to leave this here for you to do with whatever you want. The thing that bothers me about that is, if you've got a stipulation and you've got this stipulation with the government about what ought to be, if the prosecutor is walking the fine line and asks a question which is out of bounds and you just sit there and do nothing, you don't even raise it up for the court to do anything about. And now you come up to me and say, Judge, look over the top of this and tell that trial judge he's the biggest geek that ever was, abused his discretion in not doing something about this, give it a new trial. And we're doing it on what? Plain error. The lowest level. You're absolutely correct, Your Honor. This was not raised at the time, and I know that well. I was the one who did it. I see Judge Selna sitting here. I'm saying to myself, he's the poor guy who's going to have to call the balls and strikes as they come. That's why it's plain error, Counsel. Absolutely correct. And I think that this is an area where the Ninth Circuit is particularly mindful but also particularly aggressive in making sure that the government upholds itself to the standards that is expected, which is that it can strike hard blows, but they must be fair blows. I think it's notable that in the government's brief in the prosecutorial misconduct section, there's not even a single bit of case analysis. There's not even a single comparison to other cases, why this case wouldn't fit within those cases, and I think it's because the cases are really clear that, for example, when there's vouching, when the government makes these errors and each of them go to these core critical issues, in this case of Martinez's credibility. Every single one of these issues of error really goes to the heart of, should the jury believe Mr. Martinez? And when the prosecutor does that, then even on plain error review, the case should be reversed. The conviction should be reversed. Okay. Thank you. Let's hear from the government. Good morning, Your Honor. May it please the Court, Kelly Zusman, appearing on behalf of the United States. I want to begin where my opposing counsel left off, and that is on the shying away from the law. The law is very clear that these are very case-specific and fact-specific. Many of the cases that my opponent has relied upon actually involved times when the defense attorney raised an objection. So because we are here on plain error review, we're looking at three primary factors, and that is the nature of the missteps that took place here, the quality of the vouching itself, which is, in fact, very mild, and to the question about when the prosecutor said it sounded so absolutely. Yeah, okay. You were going to go to. You characterized it as a very mild form of vouching? I did. I don't know why you would say that. Why? It just seems to me this is, you know, a USA 101 class would have taught you not to do this. I don't know who this person was who tried the case, but this is totally impermissible. Our circuit law is crystal clear on this. He should never. I think it was a he, wasn't it? Correct. He should never have gotten anywhere close to this. So I commend you for conceding that it was improper, but why would you now stand here and try to dismiss it? Back of the hand, it was some mild form. I just don't think that's right. And I don't mean to dismiss it at all, and that's precisely why. When he said, I found it truthful, yeah, I put a big V on that. No question, it is vouching. But there is a gradation, if you will, of vouching. Particularly important here is the prior page. If you look at page 519 of the transcript, this is at SCR 759, which precedes that statement, this is what the prosecutor told the jury. Mr. Martinez, the judge told you, and you should absolutely follow the instruction, to be skeptical about his testimony. He lied to the police. And the prosecutor said that again after that statement. Oh, I know, but that's exactly why this is so problematic. Don't you agree? That you have a witness whose credibility is already on shaky ice, and then you have this, I'm sure he's a very honest, earnest AUSA, stand before 12 people and say, but I believed him. Right? That is why it is so improper. It's precisely in cases like this that you can't do that. So, no, it does not help your cause to point out that the AUSA himself pointed out that this guy's credibility is shaky. That's why it's even more damaging to vouch for someone in a case like this. Which is then I want to turn to the rebuttal, where he told the jury in absolutely plain terms, what I say, what I think, doesn't matter a hoot. And the jury heard the court's instructions, that they were the ones who had to decide whether or not Mr. Martinez was credible. Now, another key difference here between the Alcantara case that my opponent has relied upon is that our case was not one that involved he said versus he said. Alcantara was the encounter with the defendant and the border patrol agent. Pivotal was what his state of mind was and the words that he used. This was a classic case involving a cooperator and corroboration. Can you maybe separate out the drug count or counts from the gun count? In terms of? In terms of this being a he said, she said, or however you put it. I guess I view the gun count as different perhaps from the plain error review standpoint from the drug count. Because there was other evidence implicating the defendant as to the drugs. But I think it was just Mr. Martinez's testimony and nothing else whatsoever that implicated him on the gun count. Am I wrong about that? Well, and I guess it depends on how you view the evidence. Certainly it was Mr. Martinez who said it was Mr. Helguera who had given him the firearm and insisted that he bring the firearm with him along on these trips. But it was Mr. Helguera who in fact opened the glove box where the gun was located and then closed it. That's why it seems to me this is so. The entire case for the gun count has to turn on the jury. The jury is believing Mr. Martinez because Martinez's version is that it was Helguera himself who two minutes before they got pulled over took the gun from the center and put it in the glove compartment. The cop is at the passenger side door and the guy is going to open the glove compartment and there's nothing else in there except a gun. Right? I mean, that picture, it's a pretty real looking gun. So, I mean, that's why it just seems this. Martinez cannot possibly be believed on that point. That just makes no sense. Why wouldn't Helguera open with the cop standing right there? He knows that he just put a gun in there and he's going to open that? That makes no sense. It may not make any sense to us in this courtroom, but if you put yourself into Mr. Helguera's shoes, he's in a car, he's got methamphetamine sitting next to him, he's got 65 pounds of drugs in the back of the minivan, and they've just been pulled over by a trooper. Now, with the adrenaline that was flowing through his body, it makes complete sense to me that he would have forgotten that that gun was in the glove box even if he had just put it in there. Two minutes earlier. We're talking about someone who was in panic mode. They knew they were in trouble when that trooper pulled them over. I think your view of what normal human behavior is is different from mine, but put that aside. All I'm saying is that I think the government had zero evidence connecting the defendant to the gun other than Mr. Martinez's statement that he had put it in there and he had told him to bring it, right? And putting our different interpretations of what might have happened aside, we have no evidence. We have no evidence of what was going through Mr. Helguera's mind. So you and I are both speculating. My question to you is what other evidence besides Mr. Martinez's testimony did the government present tying the defendant to the gun? And that's all we have. That's it. That's what I'm saying. So to me, our cases are they state the proposition just as your opponent phrased it. Even on plain-air review, when the government engages in impermissible vouching with respect to a key witness and that witness's testimony is the only testimony that supports a verdict, we have to send it back for a new trial. And I disagree that it has to be sent back for a new trial. And that's because this jury was properly instructed to view Mr. Martinez's testimony with skepticism. The jury heard from this prosecutor view it with skepticism. They didn't get that in Alcantara. He told them to view it with skepticism twice. And when we're looking at Mr. Martinez, our theory at this trial was that Mr. Martinez should be believed because his testimony was corroborated in several material respects from the description of the trip that they took, 40 hours, 2,000 miles, and his cell phone records corroborated that. It was Mr. Martinez who had the photograph on his phone of the $500,000 in cash on the bed in the motel room. It was Mr. Martinez who said, we used methamphetamine on the way up. And, look, we had the receipt from the package of cigarettes to prove that, yeah, that was when they got the package of cigarettes, was on the way back up. It was Mr. Helguera who had $3,400 in cash in his backpack and on his person when Mr. Martinez said he had been promised $3,000 to make this trip. So this is not a case in which the government was saying, believe Martinez because we tell you to. The bulk of this closing argument, 95% of this closing argument, was believe Martinez because we have given you evidence that you can look at and you can verify that what he is saying, at least in these respects, is accurate. I think I would submit to you that the evidence at trial was as consistent with Martinez being the ringleader type and Mr. Helguera being the kind of helper outer and getting the money to do so. I mean, I don't have any confidence that Martinez was telling the truth in terms of, hey, it was all on the other guy. I think, if anything, it suggests that he was the guy and he was trying to finger his brother-in-law. Thanks, brother-in-law. But that just goes to whether Mr. Helguera knew about the drugs. And that's why I'm saying I grant you, maybe as to the drug count, this wasn't that big of a deal. But as to the gun count, I return to the point that the jury had to believe Martinez on that point in order to convict. And two points, if I may, Your Honor. The jury had good cause to believe Mr. Martinez because of the corroboration. And I do want to push back a little bit on your assessment that Mr. Martinez was not credible. And that's because – No, no. Okay, yeah. Let me just clarify. I'm just saying that the evidence, to me, was kind of an equipoise as to whether he was being truthful about Helguera being the one who sort of was the main guy and Martinez being a helper. Certainly a jury could resolve it reasonably either way. I'm not disputing that. Okay. Because Judge Brown, at sentencing, found Mr. Martinez to be a credible witness. I know. It depends on the sentencing thing. And if I may, in contrast to Alcantara, there was no counter-narrative here. The jury wasn't presented with two different stories. It was Mr. Martinez's story along with our corroboration, and there was nothing else. There was no counter-explanation for Mr. Helguera's presence, for his knowledge of the drugs, for his knowledge of the gun. So I still go back to Alcantara was a high-water mark. It was a split decision from this court, 2-1. One of your judges didn't think that that case should go back. Our case falls below that. We are not to that plain error threshold. You look at all of these prosecutor statements, and that's why I conceded. I agree. Saying I found him truthful, that was impermissible vouching. But if you look at the overall text of this closing argument, you look at the fact that this prosecutor repeatedly told the jury, View him with skepticism. Don't believe me. What I say doesn't matter a hoot. That takes us out of plain error. It was a simple error. It was a misstep. We've acknowledged it. No question. I don't want our prosecutors saying, I believe some witness. And we make every effort to prevent words like that coming out of our prosecutors' mouths. But nevertheless, we look at the strength of the evidence in this case against Mr. Helguera. We look at the overall context of the closing argument and the admitted vouching, and we simply don't get over that plain error threshold. I'm happy to turn to any of the other issues if the court has questions on any of those. Otherwise, I would submit. Okay. Very good. Thank you, Your Honor. You have a little bit of time left for rebuttal. Thank you, Your Honor. A couple of points. I guess I disagree with the government on the Alcantara case. That was not a case where the cooperator's testimony was being vouched for. What the prosecutor did in that case is stood up and said that the jury should believe a law enforcement officer because they're sworn to uphold the law. So that was vouching for a law enforcement officer, not for a cooperator. And so the notion that the jury was instructed to view Mr. Martinez's testimony with skepticism, I don't think Alcantara really applies in that analysis. I'm a little bit troubled by the government's argument that there was no alternative explanation given. That sounds kind of like a suggestion that would contravene Mr. Helguera's Fifth Amendment right not to testify at trial. I think it's irrelevant that there was no counter-narrative. The government bears the burden of proof beyond a reasonable doubt. Now, the cases that we have cited, and it's not just Alcantara from 2015. It's case after case. The Combs case from 2004 where the prosecutor implied to the jury that an agent would get punished for lying, so the jury should believe the agent. And the Kerr case in 1992 where the prosecutor told the jury that he, the prosecutor, thinks the witness who provided the only direct evidence in that case, much like in this case, is honest. So I think the cases are right in line with this case. Thank you. All right. Thank you very much. The case just argued is submitted.
judges: N.R. Smith, Watford, Selna